IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAN MATIAS RAUDA,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID JENNINGS, et al.,<br><br>    Defendants. | Case No. 21-cv-03897-CRB<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER; EXTENDING ADMINISTRATIVE STAY** |

On May 24, 2021, Willian Matias Rauda petitioned this Court for a writ of habeas corpus "to enjoin Respondents Department of Homeland Security (DHS) from executing his deportation." See Pet. (dkt. 1) ¶ 1. He now moves for an emergency temporary restraining order, which would "enjoin" the government "from removing" Mr. Matias until the Court rules on his habeas petition. See Second Mot. for TRO (dkt. 10) at 9. The Court has administratively restrained the government from deporting Mr. Matias pending the Court's ruling on his motion for a TRO.

Because 8 U.S.C. § 1252(g) deprives the Court of jurisdiction to hear Mr. Matias's claims, the Court denies Mr. Matias's motion. But given the severe harm that Mr. Matias will face if he is deported, the Court extends the administrative stay that is already in place for five additional days so that Mr. Matias may seek further relief from the Ninth Circuit.

**I.  BACKGROUND**

Mr. Matias, a national of El Salvador, is 24 years old and has been unlawfully residing in the United States since February 2014. See Pet. ¶ 3. He started in the Bay Area and had a child there, but in October 2015 relationship issues caused Mr. Matias to leave for Maryland. Id. ¶ 18–19. There, in April 2017, Mr. Matias pleaded guilty to

aggravated assault. Id. ¶ 21.[1] He was released from custody soon after and returned to the Bay Area, where he reunited with his partner and had another child. Id. ¶¶ 21–22. In November 2018, Immigration & Customs Enforcement (ICE) detained Mr. Matias and initiated removal proceedings. Id. ¶ 23.[2]

In those proceedings, Mr. Matias sought protection under the Convention Against Torture (CAT). Id. "To qualify for CAT relief, an alien must establish that 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" Garcia-Milian v. Holder, 755 F.3d 1026, 1033 (9th Cir. 2014) (quoting 8 CFR § 208.16(c)(2)). The anticipated torture must also be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 CFR § 208.18(a)(1). In this context, "acquiescence" means that a public official, "prior to the activity constituting torture," has "awareness of such activity and thereafter breach[es] his or her responsibility to intervene." Id. § 208.18(a)(7). But "general ineffectiveness . . . to investigate and prevent crime will not suffice to show acquiescence." Andrade-Garcia v. Lynch, 828 F.3d 829, 836 (9th Cir. 2016).

Mr. Matias argued before an Immigration Judge that if he was deported, Salvadoran authorities would torture him. See Pet. ¶ 24. Mr. Matias told the Immigration Judge that before leaving El Salvador, he had been forced to do tasks for MS-13 and was repeatedly beaten and harassed by police officers who considered him a gang member. Id. ¶ 17–18.

The Immigration Judge denied Mr. Matias CAT relief. Id. ¶ 24. The Immigration Judge found that Mr. Matias was credible and that Mr. Matias had been tortured by Salvadoran authorities on two occasions. Id. But the Immigration Judge also found that changed circumstances made it unlikely that Mr. Matias would be tortured again. Id. Those changed circumstances were (1) Mr. Matias's new lifestyle as a family man who would not be working for MS-13, such that Salvadoran police would not likely target him,

---

[1] Mr. Matias's motion to vacate his plea and conviction based on "ineffective assistance of counsel and factual innocence" is pending in Maryland state court. Pet. ¶ 21.
[2] Mr. Matias has remained in ICE custody since then. See Pet. ¶ 24.

2

and (2) El Salvador's improved track record of attempting to control gang violence, such that Salvadoran authorities would not likely "acquiesce" in any violence against Mr. Matias by MS-13 gang members. Id.

Mr. Matias unsuccessfully appealed to the BIA. Id. ¶ 25. And on January 28, 2021, the Ninth Circuit held that substantial evidence supported the agency's findings and denied Mr. Matias's petition for review. Id.; see also Matias Rauda v. Wilkinson, 844 F. App'x 945, 949–50 (9th Cir. 2021).

Mr. Matias now alleges that new developments have undermined the agency's finding that Mr. Matias will not likely suffer torture if he is removed to El Salvador. On February 9, 2021, an MS-13 gang member sent a threatening text to Mr. Matias's significant other. See Pet. ¶ 26. The message called Mr. Matias a "snitch" and said that MS-13 gang members would kill Mr. Matias in El Salvador. Id. Mr. Matias called an acquaintance in El Salvador, who confirmed that MS-13 had labeled him a "snitch." Id.

Mr. Matias also alleges that political changes in El Salvador have undermined the agency's finding that government officials would not likely acquiesce in gang violence against him. Id. ¶ 27–28. In particular, "President Nayib Bukele's allies in the national legislature voted to remove the country's top prosecutor . . . [and] five constitutional court judges." Id. ¶ 27. According to Mr. Matias, international observers are concerned that Bukele is "attempting a coup." Id. ¶ 28. The U.S. government has condemned Bukele's actions and (through Vice President Kamala Harris) expressed "deep concerns about El Salvador's democracy." Id.

On April 22, 2021, Mr. Matias moved to reopen his immigration case so that the BIA could reconsider his request for CAT relief given these developments. Id. ¶ 29. The Ninth Circuit's mandate, issued on May 13, 2021, terminated the stay of removal that had been in place. Id. ¶ 30. The next day, to avoid being deported before the BIA ruled on his motion to reopen, Mr. Matias moved the BIA for an emergency stay of removal. Id. ¶ 31. On May 21, 2021, the BIA denied that motion for an emergency stay. Id. ¶ 32.

On May 24, 2021, Mr. Matias petitioned for a writ of habeas corpus in the U.S.

3

1  District Court for the Northern District of California, requesting that the Court enjoin the
2  government from removing him before the BIA ruled on his motion to reopen. See id. at
3  12. Mr. Matias also moved to enjoin the government from removing him until the Court
4  ruled on his habeas petition. See First Mot. for TRO (dkt. 2) at 6. Judge Koh denied that
5  motion without prejudice. See Order Denying First Mot. for TRO (dkt. 5).

6  On May 25, 2021, Mr. Matias again moved for an emergency temporary restraining
7  order pending adjudication of his habeas petition. See Second Mot. for TRO (dkt. 10). On
8  May 26, 2021, the case was reassigned to Judge Freeman. See First Order Reassigning
9  Case (dkt. 12). The same day, Judge Freeman entered an emergency administrative TRO
10 until the Court was able to rule on a fully briefed motion. See Administrative TRO (dkt.
11 13). But later that day, Judge Freeman recused herself and the case was reassigned to the
12 undersigned judge. See Order of Recusal (dkt. 18); Second Order Reassigning Case (dkt.
13 19). The Court extended the administrative restraining order and set a hearing. See Order
14 Extending Administrative TRO (dkt. 22).

15 Mr. Matias's motion for a TRO is now fully briefed. See Opp. (dkt. 20); Reply
16 (dkt. 24-1). The Court heard argument on June 2, 2021. See Minute Entry (dkt. 26). At
17 the hearing and in a subsequent filing, the government agreed to not deport Mr. Matias
18 until the Court issued its ruling, effectively extending the administrative restraining order
19 until the date of this order. See ICE Notice (dkt. 31).[3]

## II. LEGAL STANDARD

A TRO is an "extraordinary remedy" that should be awarded only upon a clear showing that the plaintiff (or in this case, the petitioner) is entitled to such relief. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The party seeking a TRO must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. See id. at 20. Alternatively, the moving

---

[3] ICE agreed to not deport Mr. Matias until after Monday, June 14, 2021, on the presumed understanding that the Court would issue its opinion by then. See ICE Notice.

1  party must demonstrate that "serious questions going to the merits were raised," that "the
2  balance of hardships tips sharply in the [petitioner's] favor," and that the other two Winter
3  elements are satisfied. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th
4  Cir. 2011) (quotation omitted). The "likelihood of success on the merits 'is the most
5  important Winter factor.'" Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th
6  Cir. 2017) (quoting Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015)).

**III.    DISCUSSION**

Mr. Matias argues that the government's imminent execution of his removal order while his motion to reopen is pending will violate his due process rights, along with CAT and the Immigration & Nationality Act. See Second Mot. for TRO at 2–4. The Court lacks jurisdiction to reach those claims and thus denies Mr. Matias's motion. But given (1) the likelihood of severe irreparable harm that Mr. Matias faces; and (2) the government's acknowledgment that courts in this district have answered the jurisdictional question differently, the Court extends the administrative restraining order for five days.

**A.    Jurisdiction**

8 U.S.C. § 1252(g) deprives courts of jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." That means courts lack jurisdiction over claims challenging the government's decisions or actions to execute removal orders. Mr. Matias's habeas petition and his motion for a TRO both ask the Court to enjoin the government from executing his removal order. See Pet. ¶ 1; Second Mot. for TRO at 9. Because his claims arise from the government's "decision or action" to "execute" his removal order, § 1252(g) bars the Court from hearing them.[4]

The Court disagrees with other decisions to the contrary, including the Court's prior

---

[4] The Court is mindful that the Ninth Circuit presently lacks jurisdiction to review the BIA's denial of Mr. Matias's motion for an emergency stay but would have such jurisdiction once the BIA denies Mr. Matias's motion to reopen (if the BIA denies the motion to reopen). See Shaboyan v. Holder, 652 F.3d 988, 990 (9th Cir. 2011). Mr. Matias has neither requested that this Court review the BIA's denial of his motion for a stay nor explained how this Court would have jurisdiction to do so. See Pet.; Second Mot. for TRO.

5

decision in Yaide v. Wolf, No. 19-cv-07874-CRB, 2019 WL 6896148 (N.D. Cal. Dec. 18, 2019). There, the Court relied on the Ninth Circuit's statement that "neither AEDPA nor IIRIRA expressly repealed statutory habeas corpus relief pursuant to 28 U.S.C. § 2241." Id. at *3 (quoting Magana-Pizano v. INS, 200 F.3d 603, 609 (9th Cir. 1999)). Then, the Court quoted the Ninth Circuit's statement that "aliens may file § 2241 petitions that allege constitutional or statutory error in the removal process." Id. (quoting Gutierrez-Chaves v. INS, 298 F.3d 824, 829–30 (9th Cir. 2002)). These Ninth Circuit statements predate the REAL ID Act of 2005, which expressly deprived courts of the jurisdiction that Mr. Matias asks this Court to exercise. See Pub. L. 109-13, Div. B, Title I, § 106(a) (amending the relevant provisions in 8 U.S.C. § 1252 to bar jurisdiction over § 2241 habeas petitions challenging the execution of removal orders). Thus, these statements cannot justify exercising jurisdiction here.

Nor do other Ninth Circuit decisions predating the REAL ID Act of 2005 suggest that the Court has jurisdiction over Mr. Matias's claims. In United States v. Hovsepian, the district court enjoined the INS from deporting Hovsepian based on a "purely legal question" that did not pertain to the government's "discretionary authority" to remove. 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc). When the district court had sentenced Hovsepian for possession of an unlawful destructive device in an underlying criminal case, there had been "no deportation provision relevant" to him. Id. at 1149. But after "Congress amended the immigration laws to render deportable any alien who had been convicted of possessing an unlawful destructive device or other firearm," and made this ground for deportation "retroactive," Hovsepian was "subject to deportation." Id. The district court enjoined "the INS from deporting Hovsepian on any ground not in existence at the time of his original sentencing." Id. at 1155. In reversing the district court on the merits, the Ninth Circuit held that the district court had jurisdiction to address the pure legal question whether only the pre-amendment immigration laws applied to Hovsepian. See id. at 1155–56. But Hovsepian is inapposite here for two reasons. First, Mr. Matias's due process claim is not purely legal. Mr. Matias does not assert that under the Due

6

Process Clause, the government may not deport any alien with a pending motion to reopen. See Reply at 12.[5] Instead, he asserts that if he is "detained, dead, or disappeared, he will have no opportunity to be heard on his motion to reopen." Id. (quoting Sied v. Nielsen, No. 17-cv-06785-LB, 2018 WL 1142202, at *26 (N.D. Cal. March 2, 2018)). His due process claim thus hinges partly on the factual question whether his removal will likely result in his detention, death, or disappearance in El Salvador before the BIA rules on his motion to reopen.[6] Second, Mr. Matias's legal arguments take direct aim at the government's execution of his removal order, not the underlying law that makes Mr. Matias deportable. See Hovsepian, 359 F.3d at 1155–56.

Barahona-Gomez v. Reno is similarly not on point. There, the Ninth Circuit held that § 1252(g) does not apply to "general collateral challenges to unconstitutional practices and policies used by the agency." 236 F.3d 1115, 1118 (9th Cir. 2001) (quotation omitted); see also Catholic Soc. Servs., Inc. v. INS, 232 F.3d 1139, 1150 (9th Cir. 2000) (en banc) (holding that § 1252(g) does not prevent the district court from enjoining the Immigration and Naturalization Service's advance parole policy). Here, Mr. Matias challenges and seeks to enjoin the execution of his removal order, not an agency practice or policy. See Second Mot. for TRO at 9.

Post-REAL ID Act of 2005 decisions do not support artificially narrowing § 1252(g) to permit the Court to hear Mr. Matias's claims, either. For example, Mr. Matias relies on Singh v. Holder, which held that district courts have jurisdiction to review "bond hearing determinations for constitutional claims and legal error." 638 F.3d 1196, 1200 (9th Cir. 2011). Singh did not address a challenge to the execution of a removal order, which explains why Singh did not cite or discuss § 1252(g). Mr. Matias also relies

---

[5] Such an argument would not fare well given Mr. Matias's concession that "no regulatory bar prevents him from litigating his motion to reopen outside the United States." Reply at 12 (citing Toor v. Lynch, 789 F.3d 1055, 1057 (9th Cir. 2015); Reyes-Torres v. Holder, 645 F.3d 1073, 1075 (9th Cir. 2011)).
[6] At oral argument, the government disputed Mr. Matias's factual contention that he has received credible threats. The Court does not purport to resolve that dispute here, but the dispute's existence underscores that Mr. Matias's claims involve both legal and factual questions.

on Arce v. United States, 899 F.3d 796, 801 (9th Cir. 2018). Arce addressed an alien who had been removed to Mexico "in direct violation of a temporary stay of removal" and who then attempted to sue the United States under the Federal Tort Claims Act. Id. at 798. Arce held that § 1252(g) did not deprive the district court of jurisdiction because the alien's claim arose "not from the execution of the removal order," but from the "violation" of the Ninth Circuit's stay order. Id. at 800. Here, by contrast, Mr. Matias challenges the government's execution of his removal order. Finally, Jennings v. Rodriguez does not support Mr. Matias's position. See 138 S. Ct. 830, 841 (2018). Consistent with Arce, Jennings emphasized that § 1252(g) does not strip courts of jurisdiction to hear "any claim that can technically be said to arise from" the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders." Id. (quotations omitted). Instead, the provision refers to "just those three specific actions themselves." Id. Here, Mr. Matias challenges one of those three specific actions because he challenges the government's decision to execute his removal order.

Having concluded that § 1252(g) bars that challenge, the Court must determine whether applying § 1252(g) here violates the Suspension Clause. It does not.

The Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I, § 9, cl. 2. Although the Supreme Court has not conclusively determined whether interpreting the Suspension Clause requires examining "the scope of the writ as it existed in 1789" or some later date, see DHS v. Thuraissigiam, 140 S. Ct. 1959, 1969 n.12 (2020), applying § 1252(g) to bar Mr. Matias's claims does not violate the Suspension Clause either way.

The "historic role of habeas is to secure release from custody." Id. at 1970. Here, in arguing that he should not be removed while his motion to reopen is pending, Mr. Matias does not attempt to secure his release from custody. Although his habeas petition contains a cursory request for release, see Pet. at 12, his motion for a TRO does not. Indeed, neither his habeas petition nor his motion for a TRO contains a single argument

8

regarding his detention. In short, Mr. Matias seeks a temporary stay of removal, not release from custody.

Assuming the scope of the writ protected by the Suspension Clause may nonetheless extend to claims seeking "relief other than release," Thuraissigiam, 140 S. Ct. at 1975, it does not extend to the type of claim at issue here. At most, the writ has enabled aliens to raise legal challenges to deportation orders and denials of eligibility for discretionary relief. See INS v. St. Cyr, 533 U.S. 289, 306–08 (2001); but see Thuraissigiam, 140 S. Ct. at 1969 & n.12, 1981 (explaining that St. Cyr "did not consider" the "attempted use of the writ" to "claim the right to . . . remain in a country or to obtain administrative review potentially leading to that result," while holding that "the writ has never encompassed" such claims).[7] Here, Mr. Matias stresses that he is not challenging his deportation order or any ruling that he is ineligible for relief from removal. See Reply at 7. Instead, he is challenging the government's imminent execution of his removal order. And, as discussed above, this challenge is not purely legal because it rests on disputed factual contentions regarding what will happen upon Mr. Matias's removal to El Salvador.[8]

In sum, because Mr. Matias's claims do not "call for traditional habeas relief" even under an evolving understanding of the writ, applying § 1252(g) to bar his claims does not implicate the Suspension Clause. Thuraissigiam, 140 S. Ct. at 1970; see also Hamama v. Adducci, 912 F.3d 869, 875 (6th Cir. 2018) ("[B]ecause Petitioners' removal-based claims fail to seek relief that is traditionally cognizable in habeas, the Suspension Clause is not triggered.").

---

[7] The Second Circuit's decision in Ragbir v. Homan, which held that the Suspension Clause "requires the availability of a petition for writ of habeas corpus" in similar circumstances, 923 F.3d 53, 66 (2d Cir. 2019), relied on a reading of St. Cyr that the Supreme Court has since rejected as overly broad, see id. at 76–77; Thuraissigiam, 140 S. Ct. at 1981.

[8] Traditional habeas courts had no consistent practice, but sometimes "permitted factual inquiries" when other opportunities for judicial review were unavailable. See Richard H. Fallon, Jr. & Daniel Meltzer, Habeas Corpus Jurisdiction, Substantive Rights, and the War on Terror, 120 Harv. L. Rev. 2029, 2102 (2007). The cases exemplifying this practice, however, appear to have involved challenges to the findings justifying custodial detention. See id. at 2102–03. There is no indication that habeas courts have traditionally resolved factual questions in the first instance to temporarily halt the execution of deportation orders. See Thuraissigiam, 140 S. Ct. at 1969–70 & n.12.

Congress has determined that the Court lacks power to hear Mr. Matias's claims challenging the government's execution of his removal order. Even when read narrowly, § 1252(g)'s jurisdictional bar squarely applies and does not run afoul of the Suspension Clause.

### B. Administrative Restraining Order

For several reasons, the Court extends the administrative restraining order currently in place for five days so that Mr. Matias can seek relief from the Ninth Circuit.

Most obviously, Mr. Matias faces a likelihood of severe irreparable harm if he is removed to El Salvador. At oral argument, the government doubted that Mr. Matias has received credible threats but did not (and could not) deny that if Mr. Matias's allegations are true—if he has received and confirmed genuine threats against his life—he may be killed. At this stage, the Court lacks enough information to resolve factual questions regarding the allegations and thus presumes their truth. Needless to say, a likelihood of death is a likelihood of irreparable harm. For the same reason, the balance of hardships strongly favors Mr. Matias.

Further, the Court's jurisdictional holding is not free from doubt.[9] As the government acknowledged at oral argument, courts in the Northern District of California have reached different conclusions. See Yaide, 2019 WL 6896148, at *3 (declining to apply § 1252(g)); Sied, 2018 WL 1142202, at *20 (same); but see, e.g., Ma v. Holder, 860 F. Supp. 2d 1048, 1056–60 (N.D. Cal. 2012) (applying §1252(g)). The government also acknowledged that although the Sixth Circuit has applied § 1252(g) consistent with the Court's ruling here, see Hamama, 912 F.3d at 874, there is no Ninth Circuit decision on point.

Given the severe harm that Mr. Matias faces and the lack of binding caselaw on the

---

[9] This is not a reason for the Court to grant Mr. Matias's motion for an injunction pending resolution of his habeas petition, see Munaf v. Geren, 553 U.S. 674, 690 (2008) ("A difficult question as to jurisdiction is, of course, no reason to grant a preliminary injunction. It says nothing about the likelihood of success on the merits . . . .") (internal quotation marks omitted), and the Court thus grants only a limited administrative stay.

disputed jurisdictional issue, the Court deems it appropriate to restrain the government from deporting Mr. Matias for five full days from the issuance of this order. This continued administrative stay will provide Mr. Matias with an opportunity to seek further relief from the Ninth Circuit.

## IV. CONCLUSION

For the foregoing reasons, Mr. Matias's motion for a TRO is denied. The government is ordered to not deport Mr. Matias for five full days from the issuance of this order.

**IT IS SO ORDERED.**

Dated: June 14, 2021



CHARLES R. BREYER
United States District Judge